■ FREIDMAN DREW CORPORATION, Appellant, v MC HOLDINGS PARTNERS et al., Respondents.—Judgment, Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered December 18, 1990, which dismissed the complaint, unanimously affirmed, with costs. Appeal from the order entered on or about December 6, 1990, which granted defendants' motion for summary judgment dismissal, unanimously dismissed as superseded by the appeal from the final judgment, without costs.

Defendant MC Holdings Partners owned the Miami Center Complex, consisting of a 34-story hotel and a 35-story office tower with retail space on the lower floors. Plaintiff's president introduced Lincoln Property Co. as a prospective purchaser to MC Holdings Partners, without having any specific fee arrangement with either party. A letter agreement dated April 2, 1986 between plaintiff and MC, provided, "If Lincoln purchases Miami Center, M.C.H.P. is willing to pay [plaintiff] a commission of ⅜ of 1% of the sales price, same to be earned and payable only when, as and if title is conveyed to Lincoln * * *. Our obligations hereunder shall expire on September 1, 1986 if Lincoln has not, by that date, taken title to Miami Center." Lincoln did offer as much as $248 million for the property, but it is undisputed that no agreement was reached by September 1, 1986. Plaintiff has not established any extension of plaintiff's employment by defendant beyond that date. In May 1987, MC Holdings Partners executed a letter of intent with an independent, third party-buyer. Consequently, the property was taken off the market for several months. Months after those negotiations collapsed, MC Holdings Partners signed another letter of intent with another independent

buyer. Again, the property was taken off the market and again those negotiations collapsed. MC Holdings then determined to market the hotel and office components of the complex separately. In February 1989, the office tower was sold for $118 million, allegedly to a nominee of Lincoln Property Co. Plaintiff does not claim to be the procuring cause of the transaction and thus, may recover only if its termination was fraudulent or in bad faith and deprived the plaintiff of the opportunity to earn a commission *(Columbia Asset Mgt. Corp. v Emerson Equities,* 75 NY2d 759).

Plaintiff's bad faith claim is conclusively negated by the evidence in the record and "by common-sense realities of the relevant events" *(Aegis Prop. Servs. Corp. v Hotel Empire Corp.,* 106 AD2d 66, 75; *Thomson McKinnon Sec. v Cioccolanti,* 161 AD2d 523). To suggest that MC would delay for two and a half years a sale of between $118 and $248 million, in order to circumvent an obligation of three-eighths of one percent to plaintiff is, at the very least, highly unrealistic. Moreover, MC's execution of letters of intent with other prospective purchasers in the two and a half years between plaintiff's termination and the ultimate sale contradict the inferences urged by plaintiff. Plaintiff's termination was not unilaterally dictated by MC nor did MC cause plaintiff's nonperformance of the agreement, but rather the termination was pursuant to the parties' sole agreement *(contrast, Simon v Electrospace Corp.,* 32 AD2d 62, *mod* 28 NY2d 136; *O'Connell v Rao,* 70 AD2d 982, *lv denied* 48 NY2d 609). Concur—Sullivan, J. P., Rosenberger, Wallach, Asch and Kassal, JJ.